**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Beth A. Buchanan
United States Bankruptcy Judge

**Dated: December 15, 2023**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **IN RE:** | **Case No. 23-12409** |
| **LA MOUNT GROUP, LLC** | **Chapter 11**<br>**Subchapter V** |
| **Debtor and Debtor in Possession** | **Judge Beth A. Buchanan** |

_____

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361
362 AND 363, FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9014, AND
LOCAL RULE 4001-2: (I) AUTHORIZING DEBTOR TO USE CASH
COLLATERAL; (II) GRANTING PAYMENT OF ADEQUATE PROTECTION;
(III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING AND
APPROVING THE FORM AND METHOD OF NOTICE OF FINAL HEARING;
(DOC. #6)**

_____

1

20851846 _1

This matter came before the Court for hearing on December 14, 2023 at 2:30 P.M. (the "**Interim Hearing**") on the *Motion of Debtor, La Mount Group, LLC ("La Mount"), for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 ,363 and 507, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (I) Authorizing Debtor to Use Cash Collateral (II) Granting Payment of Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling and Approving the Form and Method of Notice of Final Hearing;* (the "**Motion**") [Doc. No. 6], filed by La Mount Group, LLC, debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"); the Debtor having filed a voluntary petition under chapter 11 Subchapter V of title 11, United States Code (the "**Bankruptcy Code**"), on December 11, 2023 (the "**Petition Date**"), and having requested in the Motion entry of interim and final orders:

(1)    authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the Debtor's use of Cash Collateral (as defined herein) of Newtek Small Business Finance, LLC (the "**Lender**");

(2)    granting the Lender (a) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Pre-Petition Collateral (as defined herein), (b) Replacement Liens (as defined herein); and

(3)    granting any further and related relief as the Court deems just and equitable.

Upon the record of the Case and the record of the Interim Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtor's estate and creditors;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AN INTERIM BASIS FOR PURPOSES OF ENTERING THIS INTERIM ORDER:

A. On the Petition Date, the Debtor filed a voluntary petition under chapter 11 Subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**"). The Debtor is continuing in the management and possession of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C. Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) of the Bankruptcy Code, and no further notice of, or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

D. The use of Cash Collateral (as defined herein) is granted, only upon the terms and conditions contained in this Interim Order.

E. It is in the best interests of the Debtor's creditors and estate that it be allowed to continue its operations under the terms and conditions set forth herein.

F. Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and

Bankruptcy Code section 102(1), as required by Bankruptcy Code section 363(b) has been given to the following parties in interest: the U.S. Trustee, the Lender, the secured creditors, the Subchapter V Trustee, and the creditors holding the twenty (20) largest unsecured claims against the Debtor's estate (collectively, the "**Interim Noticed Parties**").

G. Without prejudice to the rights of parties in interest, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs G(i) through G(iii) hereof shall be referred to herein as the "**Debtor's Stipulations**"):

(i) The Senior Secured Loan Indebtedness. Prior to the commencement of the Case, Debtor's senior priority lender was Newtek Small Business Finance, LLC. Debtor's obligations ("**Senior Secured Obligations**") to Lender were evidenced, in part by the following: (1) promissory note dated as of July 31, 2019 in the face amount of $ 1,020,000.00 together with all such other loan documents executed in connection therewith or relating thereto, as amended (collectively the "**Senior Secured Loan Documents**"). The total indebtedness claimed to be owing to Lender, under the Senior Secured Loan Documents, as of the Petition Date is $ 672,760.00. The foregoing obligations, together with, as of the Petition Date, all fees, costs and expenses (including, but not limited to, attorneys' fees and expenses), and other charges, amounts and costs owing, accrued, accruing or chargeable in respect thereof, of any kind or nature, whether existing or contingent, payable to or for the benefit of any person or entity, pursuant to any of the foregoing agreements, instruments or documents, is herein referred to as the "**Senior Secured Indebtedness**." Debtor's obligations owing to Lender under the Senior Secured Loan Documents, including the Senior

Secured Indebtedness, are secured by a security interests created by a security agreement and a UCC filing (the "**Pre-Petition Senior Liens**") in essentially all assets of Debtor, including Accounts, Equipment, Leases and other Goods, cash, General Intangibles, and Other Collateral, all as defined in the UCC filing (collectively, the "**Pre-Petition Collateral**").

(ii) Validity and Priority of Pre-Petition Senior Liens and Senior Secured Indebtedness. (a) The amount of Pre-Petition Senior Lien is not subject to subordination pursuant to the Bankruptcy Code, (b) the Senior Secured Obligations constitute legal, valid, binding obligation of the Debtor that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Senior Secured Loan Documents, (c) no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to the amount of the Senior Secured Indebtedness exist and (d) the Debtor and its estate have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including without limitation claims under chapter 5 of the Bankruptcy Code, against the Lender and/or their agents, attorneys, advisors, professionals, officers, directors or employees, except the Debtor may challenge the amount of the secured portion of the Senior Secured Obligation.

(iii) Cash Collateral. All of the Debtor's cash, negotiable instruments, deposit accounts, or other cash equivalents, whether original collateral or proceeds, products, rents or profits of other Pre-Petition Collateral or the proceeds thereof (the "**Cash Collateral**"), constitutes "cash collateral," as such term is defined in Bankruptcy Code section 363(a), of the Lender.

H. The Debtor represents as follows:

    (i) that without the use of Cash Collateral proposed by the Motion, the Debtor will not have the funds necessary to pay employee wages and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties. The Debtor has requested that pursuant to this Interim Order and the Budget (defined below), the Lender make available to the Debtor Cash Collateral, to be used by the Debtor solely for the purposes set forth in the Budget. The ability of the Debtor to continue its business under chapter 11 Subchapter V of the Bankruptcy Code depends upon the Debtor utilizing the Cash Collateral. The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors;

    (ii) that the terms and conditions contained in this Interim Order governing the use of Cash Collateral are in the best interests of the Debtor, its estate and creditors; and

    (iii) that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

  I. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary to prevent irreparable harm to the Debtor's estate. To the extent any objections were made to the relief sought in the Motion and the entry of this Interim Order (and not withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. <u>Motion Granted</u>.  The Motion is GRANTED as set forth herein.

2. <u>Authorization to Use Cash Collateral</u>.  The Debtor is hereby authorized to use Cash Collateral, in accordance with the terms and conditions of this Interim Order.

3. <u>Adequate Protection Payment</u>.  Debtor shall on a timely basis make monthly adequate protection payments to Lender in the amount of $ 1,500.00 per month ("Adequate Protection Payments") beginning January 5, 2024 and by the 5th day of each proceeding month.  Lender will apply each of Debtor's payments to its Senior Secured Indebtedness.  The adequate protection payment provided for in this section is contained in the Budget attached hereto as Exhibit A (the "Budget").

4. <u>Junior Lien Holders.</u>  The Court finds that other lien holders are not entitled to adequate protection payments for use of cash collateral as the amount of the first lien against the Debtor's assets exceeds the value of the cash collateral and all other assets.

5. <u>Lender's Collateral and Priority</u>.  Pursuant to Bankruptcy Code sections 362 and 363(e) as security for the prompt payment and performance of any and all obligations incurred by the Debtor to the Lender, of whatever nature or description, the Debtor is hereby authorized to grant to the Lender, and upon the entry of this Interim Order shall be deemed hereby to have granted to the Lender a valid, binding, enforceable and perfected first priority lien and security interests (the "Priority Lien Position"), superior to the liens, security interests or other interests or rights of all other creditors of the Debtor's estate on the assets of the Debtor, in and upon (i) all of the Pre-Petition Collateral and all proceeds thereof, and (ii) all of the Debtor's assets acquired

by the Debtor on or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and all proceeds of any and all of the foregoing (the assets referred to in clause (ii) is referred to as the "**Post-Petition Collateral**," and together with the property and assets in clause (i), the "**Collateral**"), and all proceeds of the Collateral up to the amount of the Lender's allowed secured claim. The Priority Lien Position shall be to the same extent, priority and validity as existed as of the date of the filing of the petition.

6. <u>Adequate Protection of Lender's Interests</u>. As adequate protection for any post-petition diminution in value of the Lender's interests in the Pre-Petition Cash Collateral, including without limitation for any diminution in value resulting from the use of Cash Collateral, the use, sale or lease of any other Pre-Petition Collateral, or the imposition of the automatic stay, the Lender is hereby granted a post-petition claim (the "**Adequate Protection Claim**") against the Debtor's estate. In order to secure the Adequate Protection Claim, the Lender is hereby granted a lien and security interest (the "**Replacement Lien**") in and upon (a) the Pre-Petition Collateral and all post-petition proceeds of the Pre-Petition Collateral, and (b) the Post-Petition Collateral and all proceeds thereof to the same extent, validity and priority as its pre-petition security interest. Nothing in this Order shall be deemed to grant Lender a security interest in the Debtor's claims under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

7. <u>Section 506(c) Waiver</u>. The Lender asserts that under the facts and circumstances of this Case there is no basis for a recovery under section 506(c) of the Bankruptcy Code and the Debtor, in any final order approving the use of Cash Collateral, which final order shall be in form and substance satisfactory in all respects to the Lender (the "**Final Order**"), intends to seek a waiver of any section 506(c) claims

against the Lender.  If this case is converted to a proceeding under Chapter 7, this section 506(c) waiver will not apply to a chapter 7 trustee.

8. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  Nothing in this Interim Order shall prejudice the rights of any party in interest other than the Debtor to object to or challenge the Debtor's Stipulations; *provided however,* that unless such other party in interest obtains proper standing and commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Lender in the nature of a setoff, counterclaim or defense to the Senior Secured Indebtedness (including, but not limited to, those under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Lender) within 60 days after the entry of this Interim Order (the **"Challenge Period"**, and the date that is the next calendar day after the termination of the Challenge Period, in the event that no contested matter or adversary proceeding is commenced during the Challenge Period shall be referred to as the **"Challenge Period Termination Date"**), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party shall be deemed to be forever waived, barred and discharged and the Debtor's Stipulations shall be binding on all persons, entities, creditors, interest holders and parties in interest in the Case or any successor case, and upon the Challenge Termination Period the Senior Secured Indebtedness shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with this Case and any successor case. Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter challenging the Debtor's Stipulations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary

proceeding or contested matter.  In accordance with 11 U.S.C. § 1183(b)(1) and 704(a)(5), standing is conferred to the Subchapter V Trustee to file an objection or challenge under this paragraph within the Challenge Period."

9. Insurance; Governmental Charges.  The Debtor, at its expense, shall (a) continue to at all times to keep the Collateral fully insured against all loss, peril and hazard and make the Lender co-insured and loss payee as its interests appear under such policies.

10. Modification of Automatic Stay.  The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) the Debtor to grant the Replacement Liens as adequate protection to the Lender, and (b) the Debtor to create, and the Lender to perfect, any and all liens and security interests granted to it hereunder; *provided, however,* that the Lender shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien or security interest granted by this Interim Order or take any other action to perfect such liens and security interests, and such liens, and security interests are hereby deemed perfected;

11. Events of Default.  The occurrence of any one or more of the following events shall constitute a "**Event of Default**" under this Interim Order:

(i) the Debtor fails to timely make the Adequate Protection Payments required by this Interim Order;

(ii) the Case is either dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(iii) the Debtor ceases operation of its business or takes any material action for the purpose of effecting such cessation without the prior written consent of the Lender;

(iv) the Final Order is not entered on or before thirty (30) days after the Petition Date;

(v) Without the consent of Lender, the Debtor increases the wages of any of its employees more than 10% above the current rate paid such employees or increases the number of employees from that which existed on the Petition Date by 1 full time or 2 part time;

(vi) Without the consent of Lender, the Debtor incurs any obligation or purchases any materials, inventory, supplies, or equipment outside the ordinary course of business;

(vii) The Debtor fails to pay and discharge timely any and all tax obligations incurred by the Debtor after the Petition Date or fails to timely pay any other expenses incurred by the Debtor after the Petition Date; and

(viii) The Debtor fails to maintain insurance on its property (both real and personal) as required by the Security Agreement and/or other credit documents entered into between the Debtor and Lender.

12. Upon the occurrence of an Event of Default, the Lender may send a Notice of default by email to Debtors counsel at eric@goering-law.com, the Subchapter V Trustee at coutinho@asnalaw.com and the U.S. Trustee at Ryan.Lett@usdoj.gov, and the Debtor shall have 5 business days to cure. In the event that the Debtor's fails to cure timely, the Lender may file a Notice of Default with the Court and the right to use Cash Collateral under this Interim Order shall immediately cease and terminate.

13. <u>No Limitation on Further Relief</u>. Nothing in this Interim Order shall limit the rights of the Lender to seek further relief (including additional adequate protection), or modification or termination of the automatic stay in accordance with Bankruptcy Code section 362(d).

14. <u>Books and Records</u>. The Debtor is directed to keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business.

15. <u>Additional Documents</u>. The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of its obligations hereunder.

16. <u>Immediate Effect</u>. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall become effective immediately.

17. <u>Survival After Confirmation, Conversion or Dismissal</u>. The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further,* that the terms and provisions of this Interim Order, as well as the liens, mortgages and security interests granted thereunder, shall continue in this Case or any successor case and such liens, mortgages and security interests and the Adequate Protection Claim shall maintain their priority as provided by this Interim Order.

18. <u>No Limitation of Modification of Order</u>. Nothing in this Interim Order shall limit the Lender's rights to seek modification of this Interim Order.

19. <u>No Prejudice of Rights Against Third Parties</u>. Nothing in this Interim Order shall in any way prejudice or compromise any rights that the Lender may have against parties other than the Debtor.

20. <u>Effect on Third Parties</u>. The provisions of this Interim Order shall be binding on all third parties provided that any other secured party may be provided adequate protection for its interests in the pre-petition collateral, if any, which adequate protection shall not contradict or otherwise interfere with the terms of the Interim Order.

21. <u>Service of this Order</u>. Within three (3) Business Days after the entry of this Interim Order, the Debtor shall serve a copy of this Interim Order on (a) the Office of the U.S. Trustee; (b) the Subchapter V Trustee; (c) all secured creditors; and (d) the State of Ohio taxing authorities; (d) the creditors holding the 20 largest unsecured claims against the Debtor's estate. Counsel for the Debtor shall promptly file a certificate of service regarding compliance with this provision.

22. <u>Binding Effect</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, the Debtor's estate and their respective successors and assigns (including any trustee appointed as a representative of the Debtor's estate or in any successor case).

23. <u>Controlling Effect</u>. To the extent that any provision of this Interim Order conflicts with any provision of any of the Pre-Petition Senior Loan Documents, which shall remain in full force and effect, this Interim Order is deemed to control and shall supersede the conflicting provision(s).

25. <u>Final Hearing</u>. The final hearing on the Motion shall be held on **January 10, 2024 at 1:00 p.m., Eastern Time**, before the Honorable Beth A. Buchanan, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Atrium Two, Suite 814, Courtroom 1, 221 East Fourth Street, Cincinnati, Ohio 45202 (the **"Final Hearing"**). Any objections or responses to entry of a final order granting the relief requested in the Motion shall be filed on or before **January 5, 2024**, provided, however, that in the event there are no timely filed objections, or all timely filed objections are resolved prior to the hearing, a final order may be entered without further hearing.

As an alternative to attendance in-person, parties may choose to attend the Final Hearing telephonically. However, any party attending telephonically is not permitted to present exhibits or examine or cross-examine witnesses. Please refer to the instructions for telephonic attendance of the hearing, including a call-in number and access code (free of cost), in Judge Buchanan's Instructions for Attendance of Telephonic Hearings located on the Bankruptcy Court's website at: www.ohsb.uscourts.gov under the Judges' Information / Judge Beth A. Buchanan / Policies and Procedures tab.

If you cannot access the instructions located on the website, please contact Judge Buchanan's Courtroom Deputy, Heather Gilliam, by telephone at (513) 684-2468 or by email at Heather_Gilliam@ohsb.uscourts.gov.

**SO ORDERED.**

/s/ Eric W. Goering
Eric W. Goering (0061146)
Goering & Goering LLC
Attorneys for Debtor
220 W. Third Street
Cincinnati, OH 45202
(513) 621-0912
E-mail: eric@goering-law.com

*/s/ John J. Rutter*
John J. Rutter (0079186)
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308
(330) 849-6713
E-mail: jrutter@ralaw.com
Attorney for Newtek Small
Business Finance, LLC

*/s/ James A. Coutinho*
James A. Coutinho (0082430)
Allen Stovall Neuman & Ashton LLP
Subchapter V Trustee
10 W. Broad St., Ste. 2400
Columbus, Ohio 43215
(614) 221-8500
E-mail: coutinho@asnalaw.com

Copies to:
Default List